**O**
**JS-6**

# United States District Court
# Central District of California

NADER MODGEDDI,

               Plaintiff,

    v.

WALGREEN CO.,

               Defendant.

Case № 2:22-cv-01521-ODW (AGRx)

**ORDER GRANTING MOTION TO REMAND [14] AND REMANDING CASE**

## I.      INTRODUCTION

Plaintiff Nader Modgeddi moves to remand this action to the Los Angeles County Superior Court for lack of subject matter jurisdiction.   (Mot. Remand ("Motion" or "Mot.") 2, ECF No. 14.)   Modgeddi argues that Defendant Walgreen Company fails to meet its burden to establish diversity jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy is less than the jurisdictional threshold of $75,000.  (*Id.*)  For the following reasons, the Court **GRANTS** the Motion.[1]

## II.      BACKGROUND

As Modgeddi alleges in the operative Complaint, from October 2021 through December 2021, Walgreen employed Modgeddi as a shift supervisor.  (Notice of

---

[1] The Court carefully reviewed the papers filed in connection with the Motion to Remand and deemed the matter appropriate for a decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Removal ("NOR") Ex. 2 ("Compl.") ¶ 9, ECF No. 1-2.)  During that time, Modgeddi observed his co-workers improperly dispense medication to patients and engage in other activities he believed to be illegal.  (*Id.* ¶¶ 10–12.)  On November 7, 2021, Modgeddi reported the misconduct to his supervisors via e-mail and over the phone. (*Id.*)

On November 24, 2021, Modgeddi met with his supervisors who then threatened to terminate his employment if he did not withdraw his complaints.  (*Id.* ¶ 13.)  After the meeting, in retaliation for having complained, Modgeddi's supervisors cut back his hours and "ma[de] his work environment very uncomfortable," including by requiring someone to "verify all of Modgeddi's deposits . . . , which had never been done before."  (*Id.*)  Thereafter, on December 8, 2021, Modgeddi quit his job in what he contends was a constructive termination.  (*Id.* ¶ 14.)

On January 21, 2022, Modgeddi filed his Complaint against Walgreen in the Los Angeles County Superior Court.  (NOR ¶ 1, ECF No. 1-1.)  In the Complaint, Modgeddi asserts four causes of action: (1) retaliation in violation of California Labor Code § 1102.5; (2) wrongful termination in violation of public policy; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress. (Compl. ¶¶ 15–38.)  Modgeddi seeks general damages, actual damages, special damages, compensatory damages, nominal damages, emotional distress damages, punitive damages, equitable remedies, attorneys' fees, and pre- and post-judgment interest.  (*Id.* at 9.)

On March 7, 2022, Walgreen removed the action to this Court, alleging diversity jurisdiction.  (NOR ¶¶ 6–56.)  On April 4, 2022, Modgeddi filed the instant Motion to Remand.  (Mot. 5.)  On April 22, 2022, after the parties fully briefed the Motion, (Opp'n, ECF No. 15; Reply, ECF No. 17), Walgreen filed an Ex Parte Application for Leave to File a Sur-Reply in support of its Motion to Remand.  (Appl.

File Sur-Reply, ECF No. 18.)  The Court granted the request.  (Order Granting Ex Parte Appl., ECF No. 20; Sur-Reply, ECF No. 22.)

### III.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress.  U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A suit filed in a state court may be removed to federal court if the federal court would have had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  Federal courts have original jurisdiction where an action presents a federal question under 28 U.S.C. § 1331, or diversity of citizenship under 28 U.S.C. § 1332.  Accordingly, a defendant may remove a case from state court to federal court pursuant to the federal removal statute, 28 U.S.C. § 1441, based on federal question or diversity jurisdiction.  Diversity jurisdiction requires complete diversity of citizenship among the adverse parties and an amount in controversy exceeding $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).

Courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992).  The party seeking removal bears the burden of establishing federal jurisdiction.  *Id*.

### IV.    DISCUSSION

Walgreen argues that the amount in controversy requirement is met because Modgeddi's claims for lost wages, emotional damages, punitive damages, and attorneys' fees, summed up, exceed $75,000.[2]  (NOR ¶ 50; Opp'n 14.)  Preliminarily, the parties agree the amount in controversy from lost wages is $6,606.[3]  (Decl. Nader

---

[2] The parties do not dispute that complete diversity of citizenship exists.  (NOR ¶¶ 10–20; Mot. 3–5.)  Accordingly, only the amount in controversy is at issue here.

[3] This figure comprises three components. First, Modgeddi claims partial back pay based on Walgreen having cut back his hours for the last two and a half weeks he worked there, for a total of $450 in partial back pay.  (Modgeddi Decl. ¶ 5.)  Second, he claims five weeks of full front pay at 42.5 hours per week and $18 per hour, for a total of $3,825 in lost full front pay.  (*Id.* ¶ 2.)  Finally,

Modgeddi ("Modgeddi Decl.")  ¶¶ 2–6,  ECF No. 14-1;  Opp'n 6–7.)   Moreover,
Modgeddi declares that he has not sought mental health care or received any
prescription medication and argues that, accordingly, his consequential damages are
limited.  (Mot. 4.)  Walgreen, for its part, presents no evidence to rebut this assertion.
(*See generally* Opp'n.)   Thus, for the purpose of this Motion, the lost wages in
controversy in this case totals $6,606.   The Court addresses each remaining
component of Modgeddi's potential recovery in turn.

**A.    Emotional Distress Damages**

The first component of noneconomic damages in this case is emotional distress
damages.   Emotional distress damages may be considered when determining the
amount in controversy.  *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir.
2005).  "[W]here the plaintiff does not allege any specific amount of such
damages . . . the removing party may submit evidence of jury verdicts in similar
cases."  *Aguilar v. Wells Fargo Bank, N.A.,* No. ED CV 15-01833-AB (SPx), 2015 WL
6755199, at *5 (C.D. Cal. Nov. 4, 2015) (citing *Kroske*, 43 F.3d at 980).  "[T]he cases
must be factually identical or, at a minimum, analogous to the case at issue."  *See
Mireles v. Wells Fargo Bank, N.A.,* 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012).
Courts are not required include emotional distress damages as part of the amount in
controversy when the party asserting jurisdiction fails to provide evidence of jury
awards from similar cases.  *Aguilar*, 2015 WL 6755199, at *6;  *Rybalnik v. Williams
Lea Inc.,* No. 2:12-cv-04070-ODW (AGRx), 2012 WL 4739957, at *3 (C.D. Cal. Oct.
4, 2012) ("[M]erely pointing to cases where juries have awarded hefty damages sums
in the past without further explanation . . . how the facts in those cases compare to the
facts presented here is . . . insufficient to meet [the] burden to establish the amount in
controversy by a preponderance of the evidence.").

Modgeddi claims seven weeks of partial front pay after he found a new job with the same pay rate
but at reduced hours, for a total of $2,331 in partial lost front pay.  (*Id.* ¶ 3.)

Here, Walgreen provides seven examples of jury verdicts that purport to show that over $75,000 in emotional distress damages is in controversy here, (NOR ¶¶ 35–41; Opp'n 9–10), along with verdict summaries[4] for each case, (Removal Decl. Christopher J. Archibald ("Removal Archibald Decl."), Exs. 2–8, ECF Nos. 4-2 to 4-8). Preliminarily, this Court will consider neither the *Abbate* case nor the *Lillie* case. (*Id.* Ex. 5 ("*Abbate* Case Summary"), ECF No. 4-5; Ex. 8 ("*Lillie* Case Summary"), ECF No. 4-8.) In *Abbate*, the court awarded a new trial on liability, nullifying the damages verdict, *Abbate v. City of Los Angeles*, No. B245481, 2014 WL 5284291, at *1 (Cal. Ct. App. Oct. 16, 2014), and in *Lillie*, the court granted the defendant's motion for judgment as a matter of law, *Lillie v. ManTech Int'l Corp.*, No. 2:17-cv-02538-CAS (SSx), 2019 WL 3387732, at *5 (C.D. Cal. July 26, 2019), *aff'd*, 837 F. App'x 455 (9th Cir. 2020). Neither case is a valid example of a jury award for the purpose of determining the amount of emotional distress damages in controversy.

The other five cases Walgreen cites are factually dissimilar from the present case. (*See* Removal Archibald Decl. Exs. 2–4, 6–7.) In all five cases, the employees worked for their employers for at least several years, and the employees all experienced discrimination, retaliation, or harassment for eight months or more. For example, in *Norman v. Hanna Boys Center, Inc.*, the plaintiff, who had worked at a boys' camp, alleged that he had been pressured for years not to disclose serious abuse problems. (*Id.* Ex. 3 ("*Hanna* Case Summary"), ECF No. 4-3.) In the present case, however, Modgeddi only worked for Walgreen for forty-two days and alleges retaliation for workplace complaints regarding improperly filling prescriptions, not serious abuse involving children, and the improper conduct as alleged lasted for less than three weeks, not years. (Mot. 3.)

---

[4] Modgeddi does not object to the use of these case summaries in general, or to any individual case summary in particular. (*See generally* Reply.)

Aside from the factual differences, none of Walgreen's cases mathematically support the assertion that emotional distress damages will exceed $75,000—a figure over eleven times greater than the stipulated potential economic damages.   For example, in *Yu v. Grifols*, the plaintiff was awarded $944,500 in economic damages but only $285,785 in non-economic damages—just under one-third of his economic damages.   (Removal Archibald Decl. Ex. 2 ("*Yu* Case Summary"), ECF No. 4-2.)

In only one of Walgreen's five cases, *Velez v. Roche*, did emotional distress damages vastly exceed economic damages, but *Velez* is also distinguishable. (Opp'n 9.)   There, the plaintiff received $505,623 in non-economic damages and $0 in economic damages.   *Velez v. Roche*, 335 F. Supp. 2d 1022, 1025 (N.D. Cal. 2004). The plaintiff had worked as a surgeon for the Air Force for two years, during which time she experienced serious and sustained gender-based discrimination.   *See* Compl., *Velez v. Roche*, No. C020337 EMC, 2002 WL 33769932 ¶¶ 10–40 (N.D. Cal. Jan. 22, 2002).   Here, by contrast in multiple ways, Modgeddi worked for Walgreen for forty-two days and alleges essentially one instance of retaliation that took place close to the end of his time working at Walgreen.   (Mot. 3.)   Thus, none of Walgreen's five cases support the notion that the emotional distress damages in controversy in this case exceed the economic damages in controversy by a factor of eleven.

Walgreen fails to provide examples of jury awards of emotional distress damages from cases that are factually similar to the present case.   Although all doubts should be resolved in favor of remand, *Gaus*, 980 F.2d at 566, the Court nevertheless gives Walgreen some benefit of the doubt by concluding that Walgreen demonstrates that the in-controversy emotional distress damages equal one-half of the in-controversy lost wages, or $3,303.   Adding this amount to the lost wages in controversy yields $9,909 in controversy thus far.

**B.    Punitive Damages**

Next, Walgreen argues that the punitive damages at stake in this case exceed $75,000.   (NOR ¶ 46.)   The Court may include punitive damages in amount-in-

controversy calculations if punitive damages are available to the plaintiff under applicable law. *Stainbrook v. Target Corp.*, No. 2:16-cv-00090-ODW (FFMx), 2016 WL 3248665, at *4 (C.D. Cal June 8, 2016) (citing *Gibson v. Chrysler Corp.*, 261 F.3d 927, 947 (9th Cir. 2001)). To prove punitive damages for purposes of the amount in controversy, the removing party may "introduce evidence of jury verdicts involving analogous facts." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) (citing *Faulkner v. Astro-Med, Inc*., No. C 99-2562 SI, 1999 WL 820198, at *4 (N.D. Cal. Oct. 4, 1999)). If the removing party does not introduce cases with "sufficiently analogous facts," the Court may refuse to consider punitive damages in its amount in controversy calculation. *Aguilar*, 2015 WL 6755199, at *7; *Ohanian v. Victoria Fire & Cas. Co*., No. CV 11-05602 MMM (RZx), 2011 WL 3319884, at *3 (C.D. Cal. Aug. 1, 2011) ("A defendant can introduce other jury verdicts to bolster its claim that potential punitive damages would raise the amount in controversy to over $75,000, but those jury verdicts must involve facts analogous to its own case.").

Punitive damages in this case are available under California Civil Code section 3294. (*See* Opp'n 11.) Section 3294 provides that, "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294(a). Crucially, however, an employer such as Walgreen

> shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

*Id.* § 3294(n).

1    Preliminary, in *Bryant*, the first of the three cases Walgreen uses to show that
2    punitive damages in this case exceed $75,000, the damages award was overturned
3    because the plaintiff failed to meet its burden under section 3294(b).   (Removal
4    Archibald Decl. Ex. 9 ("*Bryant* Case Summary"), ECF No. 4-9); *Bryant v. San Diego*
5    *Gas & Elec. Co.*, No. DO66467, 2015 WL 6164142 (Cal. Ct. App. Oct. 21, 2015).

6    In the second case Walgreen cites, *Manuel*, the plaintiff worked for a hospice
7    and a home health care facility for about three months.  (Opp'n 12); *Manuel v. Heart*
8    *to Heart Care Inc.*, JVR No. 1505190052, Case No. BC527985, 2015 WL 2394120
9    (Cal. Super. Ct. Apr. 28, 2015).  She alleged that the hospice company fired her in
10   retaliation after she reported that the hospice was employing an unlicensed social
11   worker.  *Manuel*, 2015 WL 2394120.  The jury awarded her punitive damages that
12   were roughly two times the sum of her emotional distress damages.[5] (which are
13   classified in the *Manuel* jury verdict as a species of compensatory damages.  *Id.*

14   In the third case, *Casillas v. Central California Faculty Medical Group*, the
15   plaintiff-employee, who was not a medical doctor, was instructed by her employer to
16   conduct evaluations with patients and record and bill those evaluations as if they were
17   doctors' visits.  (Removal Archibald Decl. Ex. 10 ("*Casillas* Case Summary") 1, ECF
18   No. 4-10.)  She was forced to participate in the scheme and raised complaints.  (*Id.*)
19   Thereafter, her employer engaged in a nine-month retaliation campaign that included
20   false accusations and outright lies before ultimately firing her.  (*Id.*)  She received
21   punitive damages just under four times the sum of her compensatory damages.  (*Id.*)

22   Here, Modgeddi's Complaint does not include allegations that any Walgreen
23   officer, managing agent, or director authorized or ratified the conduct in question.
24   (*See* Compl.)  This observation itself casts doubt on whether substantial punitive
25   damages are in controversy.  Additionally, the *Casillas* case is not apposite because in
26   *Casillas*, the employer required the employee to directly participate in an illegal,

27
28   [5] The *Manuel* verdict summary classifies the plaintiff's emotional distress damages as compensatory damages.  The plaintiff in that case received no compensatory damages other than emotional distress damages.  *See Manuel,* 2015 WL 2394120.

1   fraudulent medical billing scheme, fraudulently retaliated for several months, and then
2   fired the employee for complaining instead of cooperating.  (*See Casillas* Case
3   Summary.)  Here, Modgeddi makes no allegation that his supervisors asked him to
4   directly participate in illegality and fraud—much less over the course of nine months.

5       Thus, *Manuel* provides the most useful case comparison with the present case
6   because the *Manuel* plaintiff worked for a relatively short period of time before
7   termination and complained about roughly similar regulatory and compliance
8   concerns.  Pursuant to *Manuel*, the Court concludes that the in-controversy punitive
9   damages are no more than two times the sum of the actual and emotional distress
10   damages, or $19,818.  This brings the total in-controversy damages to $29,727.

11  **C.    Attorneys' Fees**

12      Walgreen contends that the Court should assess attorneys' fees at $30,000.
13  (NOR ¶ 49.)  Modgeddi argues instead that attorneys' fees should be assessed at
14  $18,000.  (Mot. 5.)  Attorneys' fees can be considered when determining the amount
15  in controversy provided that a statute authorizes fees to a successful litigant.  *Galt G/S*
16  *v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998) (citing *Goldberg v. CPC*
17  *Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982)).

18      Here, even assuming that Walgreen's assessment of the attorneys' fees is
19  appropriate, adding $30,000 in attorneys' fees to the total thus far—$29,727—yields a
20  value still securely below the jurisdictional threshold.[6]  Therefore, the Court does not
21  have subject matter jurisdiction and accordingly **GRANTS** Modgeddi's Motion.

22  ///

23  ///

24

25  [6] In Modgeddi's Reply in Support of his Motion to Remand, Modgeddi's attorney, Arthur Kim,
26  provides a declaration indicating that on April 18, 2022, he made Walgreen a $75,000 settlement
    offer, to remain open for twenty-one days.  (Reply Decl. Arthur Kim, ¶ 2, ECF No. 17.)  Modgeddi
27  argues this is evidence that the amount in controversy does not exceed $75,000.  (Reply 1, ECF
    No. 17.)  The Court need not determine the effect of the settlement offer on the amount-in-
28  controversy calculations because, with or without the settlement offer, the amount in controversy
    based on the allegations and stipulated facts remains below $75,000.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Modgeddi's Motion to Remand.  (ECF No. 14.)  The Court **REMANDS** this case to the Superior Court of California, County of Los Angeles, 111 North Hill Street, Los Angeles, CA 90012, Case No. 22STCV02632.  The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

July 7, 2022

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**